# Wingo *v.* Hardy.

*Bill in Equity for Injunction of Action at Law, and Specific Performance of Contract.*

1. *Specific performance; contract for continuous personal services involving skill, discretion, &c.*—A court of equity will not, *it seems*, specifically enforce a contract for the performance of continuous personal services involving skill, discretion, personal supervision, or any thing else of like kind, the court being without power or machinery to compel the active observance of such duties.

2. *Injunction of action at law.*—A court of equity will not enjoin the prosecution of an action at law, on grounds which are available as a defense at law.

3. *Same; breach of condition caused by party claiming forfeiture.*—A party can not claim a forfeiture on account of the breach of a condition precedent, when he himself caused, or knowingly aided in causing, the failure to perform; and this fact being available in defense of an action at law to enforce the forfeiture, it constitutes no ground for a resort to equity.

[Wingo v. Hardy.]

4. *Allegations of bill; definiteness and certainty.*—When the bill seeks to enjoin an action at law, brought to recover the possession of leased premises on account of the failure to perform a condition precedent, and shows that the only exception contained in the lease, as to open- ing and working the mines on the leased lands, was the necessary delay which might be caused in procuring the right of way through the lands of other proprietors; an averment that complainant was "delayed from six to eight weeks in obtaining rights of way," without more, is not sufficient: the names of the persons, and the nature of the proceedings, should be stated, so that the court may determine whether the case is brought within the particular exception.

APPEAL from the Chancery Court of Colbert.

Heard before the Hon. THOMAS COBBS.

The bill in this case was filed on the 21st April, 1891, by Nicholas Hardy, against A. W. Wingo and L. R. Perkins, and sought (1) an injunction against the further prosecution of two actions of unlawful detainer, to recover the possession of a quarter-section of land, which Wingo had leased to complain- ant for a term of years with a view to the mining and removal of the iron ore on the land; (2) to compel the specific perform- ance of a contract between complainant and said Perkins, by which a two-thirds interest in the lease was transferred to said Perkins, who assumed the performance of all the duties im- posed by the lease on the complainant, and was to have the entire management and control of the work in opening and operating the mine; (3) the appointment of a receiver to take possession of the property and manage it during the litigation; and (4) general relief. The lease from Wingo, who owned the land, to the complainant, contained provisions, as more fully stated in the opinion of C. J. STONE, (1) that the mines should be opened and in operation by the 15th October, 1890; (2) that one hundred tons per day should be shipped from and after that date, on which Wingo should receive a specified royalty; (3) that complainant failing to ship the stipulated number of tons, or to pay the stipulated royalty, he or his as- signs should forfeit and pay $10 per day for each day's default from and after the 15th October, 1890; and (4) that Wingo should have the right to re-enter and take possession of the premises, on default of performance of the stipulations by the lessee. Another stipulation was afterwards added to the con- tract, providing against a forfeiture on account of delay in the performance of the duties imposed on the lessee, as copied in the opinion of C. J. STONE; and the contract for a sub-lease, or transfer of rights under the contract, was in the meantime executed between the complainant and Perkins, with the knowledge and concurrence of Wingo.

The mines not having been opened by October 15th, 1890, no ore delivered, or royalty paid, Wingo gave written notice

demanding possession of the premises, and on November 21st, 1890, instituted an action of unlawful detainer before a justice of the peace; which action being decided against him by the justice, he removed the case by appeal into the Circuit Court; and on the 7th January, 1891, that appeal being still undecided, he instituted another action of unlawful detainer, before another justice of the peace. These are the actions which the bill sought to enjoin, on the ground that the defendants, Wingo and Perkins, had fraudulently colluded and combined to prevent the opening and working of the mines, in order that Wingo might claim a forfeiture, re-enter and take possession, and make a new contract with Perkins, or with other persons interested with him.

On the filing of the bill, which was under oath, the chancellor granted an injunction; which, after answers filed, the defendants moved to dissolve, for want of equity in the bill, and on the denials of the answers. The chancellor overruled this motion, but without assigning any reasons; and his decree is now assigned as error.

JACKSON & SAWTELLE, and ROULHAC & NATHAN, for appellants.—The injunction ought to have been dissolved on motion, for want of equity in the bill. The contract for the opening and working of the mines on the land, has been fully executed by Wingo—he has done all that his contract required him to do, and no specific performance is sought against him. The contract between Hardy and Perkins, performance of which is asked, involves the performance of personal services continuous in their nature, requiring the execise of skill, discretion, and constant supervision; and a court of equity will not undertake to enforce or supervise the specific performance of such a contract, having no process or machinery adequate to enforce its decrees.—Waterman on Specific Performance, § 33, and cases cited; 3 Pom. Equity, § 1405, and cases cited; 5 Wait's A. & D. 768; *Iron Age Pub. Co. v. W. U. Tel. Co.,* 83 Ala. 507; *Carlisle v. Carlisle,* 77 Ala. 343; *Wheatley v. Westminister Coal Co.,* 9 L. R. Eq. 538; *Abinger v. Askton,* 17 *Ib.* 358; *Railroad Co. v. Spear,* 32 Geo. 550; *Railroad Co. v. Washburn,* 25 Ind. 259; *Beck v. Allison,* 56 N. Y. 368; 5 De G., M. & G. 880; 2 Tenn. Ch. 773; *Marble Co. v. Ripley,* 10 Wall. 339. As against Wingo, no specific performance is asked, but an injunction of his actions at law is prayed. These actions seek to effectuate his right to re-enter for condition broken; and the defense against him is, that he caused the breach of condition, and the failure to perform. If this be true in fact, it is available as a defense to the action at law.

[Wingo v. Hardy.]

*Livingstone v. Tompkins*, 4 Johns. Ch. 415; *VanBuren v. Digges*, 11 How. 461; *Insurance Co. v. Bledsoe*, 52 Ala. 521; *Wolfe v. Parham*, 18 Ala. 450; *Sprague v. Morgan*, 7 Ala. 954; *Hatchett v. Gibson*, 13 Ala. 601; *McLendon v. Godfrey*, 3 Ala. 186; *Miller v. Swann*, 89 Ala. 635; *Haggerty v. Elyton Land Co.*, 89 Ala. 428; *Borst v. Simpson*, 90 Ala. 375; *Hood v. Disston*, 90 Ala. 379; 5 Lawson's Rights & Remedies, 4159, § 2511; 2 Bishop on Contracts, § 1431; 2 Parsons Contr., 679, 782; 1 Add. Contracts, § 326; Anson on Contracts, [283]; 1 Whar. Contracts, § 603. A court of equity will not enjoin an action at law, on grounds which are available as a defense at law.—1 Pom. Equity, §§ 440, 447; *Womack v. Powers*, 50 Ala. 5; *Brown v. Brown*, 68 Ala. 114; *McHugh v. O'Connor*, 89 Ala. 531; *Shaw v. Lindsay*, 60 Ala. 344; *Turnley v. Hanna*, 67 Ala. 101; *VanCleave v. Wilson*, 73 Ala. 387; *Robbins v. Battle-House Co.*, 74 Ala. 499. The allegation of fraudulent collusion does not add equity to the bill.— *Tillison v. Ewing*, 87 Ala. 351; *Peebles v. Burns*, 77 Ala. 292; *Youngblood v. Youngblood*, 54 Ala. 486; *Smith v. Cockrell*, 66 Ala. 65; *Kimball v. Grigg*, 47 Ala. 230; *Knotts v. Tarver*, 8 Ala. 743; *Dickinson v. Lewis*, 34 Ala. 643.

J. B. MOORE, and KIRK & ALMON, *contra.*—The fraudulent collusion charged against the defendants gives equity to the bill.—*Kennedy v. Kennedy*, 2 Ala. 571; *Costley v. Allen*, 56 Ala. 198. Two actions at law have already been instituted against the complainant, and an injunction is necessary to prevent their repetition. If complainant should sue Perkins at law, his damages could not be estimated by any adequate remedy; and the insolvency of Perkins would render a judgment unavailing.—1 Pom. Equity §§ 250–52; *Chambers v. Ala. Iron Co.*, 67 Ala. 359. As against Wingo, the injunction asked is in the nature of specific performance; and the property can be operated through a receiver, according to the details of the contract, by analogy to the frequent practice in the case of railroads.

STONE, C. J.—Wingo, in May, 1890, executed a lease to Hardy, granting to him the right to mine and remove iron ore from a quarter-section of land, the property of the lessor. The lease was to continue five years, with a privilege of renewal for five additional years. By the terms of the lease, Wingo granted mining privileges in the particular quarter-section, and certain other easements and privileges, not necessary to be named. He incurred no liability to furnish any

·[Wingo v. Hardy.]

money, labor, or anything else in promotion of the enterprise. It was a mere lease, conferring certain rights and privileges, on Wingo's part.

Hardy bound himself to open up the mines, construct and supply all necessary works and machinery, and build a spur-track connecting the mine with the railroad which ran near by. All this was to be done and completed without any assistance from Wingo. By the terms of the lease, Hardy bound himself to have the works completed, and commence shipping ore by the 15th October, 1890; to ship one hundred tons per day, and to pay Wingo a royalty of ten cents per ton for the first year, and twelve and a half cents per ton for each succeeding year. He further stipulated that, if he failed to ship the one hundred tons per day, commencing with October 15, aforesaid, then for every day he so failed, he or his assigns would pay to Wingo "ten dollars per day for each and every day thereafter" during the time he, said Hardy, should remain in default. The monthly settlements of royalty were to be made on the 25th day of each month. The lease contains this further clause: "If the party of the second part [Hardy] shall fail to pay said royalty, or the amount that is to be paid per ton for said ore, on or before the 25th day of each month, or shall fail to comply with any of the covenants herein mentioned, according to the true intent and meaning of this contract, then this contract or agreement shall be null and void, and the lessor, said Wingo, his agent, heirs, or assigns, has the right to re-enter and take possession of said leased property mentioned herein, and lease the same to other parties, if he so desires."

On June 21, 1890, another clause was added to said contract of letting, by which it was agreed by and between Wingo and Hardy, that "the only reason which will be taken into consideration by the party of the first part will be the impediment met with in securing the right of way through other parties' lands, from the above property, to make connection with the common carrier. Any detention met with in that line, such as injunctions, arbitrations, or condemnation of lands by appraisements, or other unavoidable delays, such time shall be extended to the party of the second part [Hardy] from October 15, 1890, without penalty, during the term of this lease."

It is manifest that the exemption reserved and secured to Hardy from penalties and forfeitures to be incurred by noncompliance with his contract, included only such as might result from impediments and unavoidable delays in obtaining the right of way in lands belonging to others, over which the spur-railroad track must be constructed. For a period corre-

[Wingo v. Hardy.]

sponding to the length of time Hardy might be unavoidably delayed in obtaining such right of. way, his obligation to ship one hundred tons of ore per day, or to pay daily the stipulated penalty of ten dollars, was postponed beyond October 15, 1890. If there was no impediment or delay in obtaining such right of way, then the contract contains no provision excusing Hardy from his promise to deliver one hundred tons of ore daily, beginning October 15, 1890, and, failing, to pay ten dollars per day forfeit money.

Soon after the second, or modifying clause of the lease. was agreed on and executed, Hardy sold and conveyed a two-thirds interest in the lease to Perkins. By the terms of that sale, Perkins undertook to furnish all the means, and to perform all the work, which Wingo's lease had imposed on Hardy. And the moneys to be thus expended by Perkins were to be refunded to him, with interest, out of the first profits of the enterprise. The contract between Hardy and Perkins contains these clauses: "It is understood that the party of the second part [Perkins] shall have full management of all the business which may be transacted under said lease; also, full control and disbursement of all the funds which may be derived from said business, upon the following conditions, to-wit: that the said L. R. Perkins, the party of the second part, shall conform to and faithfully carry out all of the conditions that are required of N. Hardy to carry out his part of the contract and agreement with A. W. Wingo, contained in said lease. . . . It is fully understood that N. Hardy, the party of the first part, shall aid and assist in carrying on said business at the mines and elsewhere, or furnish a competent representative, from this date until the expiration of this contract, free of compensation, other than the one-third of the net profits that may be derived from said business, after all expenses shall be paid."

These extracts show that Perkins was to furnish all the means and labor necessary to carry out Hardy's part of the lease contract, which Hardy bound himself to aid and assist, either personally, or by competent representative. This devolved on Perkins the duty and obligation to have the works completed and in operation, and to commence delivering ore and paying royalty, by October 15, 1890; and failing, to pay daily the stipulated forfeiture, unless there was hindrance and delay in obtaining the right of way for the railroad spur-track.

In November, 1890, the works not having been completed, the railroad unfinished, no ore shipped, and no royalty or penalty paid, Wingo commenced an action of unlawful detainer to obtain possession of. the land embraced in the lease.

[Wingo v. Hardy.]

The justice decided this action in favor of Hardy. Wingo thereupon took an appeal to the Circuit Court. Without waiting for a trial in the Circuit Court, Wingo, in January, 1891, commenced another action of unlawful detainer, before another justice of the peace, to recover possession of the land. Each of these actions was undecided when the bill in this case was filed in April, 1891.

The present suit is a bill by Hardy, and Wingo and Perkins are made defendants. It sets forth *in extenso* the facts summarized above. It does not aver that the works are completed, but admits they are not. Does not aver that any ore has been shipped, or can be shipped, as matters now stand. Does not aver any payment of royalty, or any offer, willingness or ability to make payment, or to complete the works and comply with the contract of letting. The *gravamen* of the complaint it makes—of the excuse it sets up for noncompliance with the contract—is, briefly, that Wingo and Perkins have colluded and entered into an agreement to defraud and oppress Hardy, by failing to perform the contract on Perkins' part, and thus to oust him of the possession; and that they, Wingo and Perkins, have mutually agreed and promised to protect, and hold each other harmless. The bill prays for the appointment of a receiver to take charge of the works, and for an injunction against the said unlawful detainer suits; prays for specific performance of the contract with Perkins, and that Wingo's suits be perpetually enjoined.

The chancellor did not appoint a receiver, but granted an injunction, restraining Wingo from prosecuting his said suits. A motion was made to dissolve the injunction, on two grounds: *first*, that the bill is without equity; and, *second*, that the material averments of the bill are denied in the answers. The chancellor overruled the motion to dissolve the injunction, and from that ruling the present appeal is prosecuted.

No ruling of the chancellor was made on that part of the bill which seeks to have specific performance of the agreement entered into between Hardy and Perkins. It would seem, however, that chancery could not entertain jurisdiction to enforce that agreement, situated as the parties and the works were when this bill was filed. When the agreement sought to have enforced involves continuous administration of executory skill, discretion, personal supervision, or any thing else of like kind, then the Chancery Court is without power or machinery to compel the active observance of such duties. Parties thus circumstanced are left to such redress as law courts can furnish for the breach of such contract.—*Marble Company v.*

*Ripley*, 10 Wall. 339; 3 Pom. Eq. 1343; *Carlisle v. Carlisle*, 77 Ala. 339; *Iron Age Publishing Co. v. W. U. Tel. Co.*, 83 Ala. 498.

Does the bill contain equity, in that phase of it which sought and obtained an injunction against the prosecution of the suits in unlawful detainer? If Hardy was hindered and prevented in the performance, through Perkins, of his contract to have the works completed and in operation by October 15, 1890, by collusion and fraudulent combination between Wingo and Perkins, could that afford him excuse for appealing to the Chancery Court for relief? We think not. No one can insist on a forfeiture for failure to perform a condition precedent, if he himself has caused, or intentionally or knowingly aided in causing the failure. To allow a recovery in such conditions, would be to permit the wrong-doer to take advantage of his own wrong.—*McLendon v. Godfrey*, 3 Ala. 181; *Sprague v. Morgan*, 7 Ala. 952; *Eads v. Murphy*, 52 Ala. 520; 1 Taylor's Landlord and Tenant, § 269; 5 Lawson's Rights and Rem., § 2510; Bishop Contr., enlarged ed., § 1431; *Borst v. Simpson*, 90 Ala. 373. This defense is legal, and, if proved, will be an answer to the actions of unlawful detainer. Under these principles, the bill of complaint in this case shows no ground for equitable relief, and the injunction ought to have been dissolved on that ground.

The bill, among many other things, charges that "complainant [Hardy] has done all that was in his power to hasten the opening and developing of said mines, from the time they began work on the 22d of June, 1890; "that they were delayed from six to eight weeks in obtaining rights of way for the railroad." This charge is not specific enough. It should have set forth what caused the delay—"injunctions, arbitrations, or condemnation of lands by appraisements, or unavoidable delays"—with such particularity of language, both as to persons and the nature of the proceedings, as that the court could determine whether such impediment or hindrance falls within the exceptional clause of the written lease. Facts should be averred, not conclusions.

Wingo's answer to this clause is, that he "denies that complainant did every thing that was in his power to hasten the opening and developing of said mines, or that he was delayed as alleged." Considering the generality and indefiniteness of the charge made in the bill, this answer was a sufficient denial. This defense, like the other, was of legal cognizance, and can be made to the actions of unlawful detainer.

We have not considered it necessary to notice the denials in the answers, in detail. All interference with the work by

[Mitchell v. Duncan.]

Wingo, and all collusion and combination between him and Perkins, are denied. Taking the answers for our guide, the chief, if not the only cause of failure to complete the work by October 15, 1890, was the fault or misfortune of Perkins in not performing his contract according to its stipulations.

The decretal order of the chancellor is reversed, and a decree here rendered dissolving the injunction.

Reversed and remanded.