[Attalla Mining & Manufacturing Co. v. Winchester et al.]

violative of sections 21 and 23 of Art. I of the constitution, which forbid imprisonment for·debt, or the making of laws giving any special privileges or immunities. The act is in line with our other statutes against false pretenses, frauds, cheats, acts to injure, and the like. One who violates the act, is· imprisoned not for the debt he owes the proprietor, and not to make him pay it, but to punish him for a wrong he has perpetrated, which is made a crime. And, this is no more of a special privilege to the hotel-keeper, than the statute against burglary from a store or a dwelling, is to the merchant who owns the store, or to the owner of the dwelling.

*Habeas corpus* denied.

# Attalla Mining & Manufacturing Co. v. Winchester et al.

*Bill in Equity to enjoin Suits at Law.*

1. *Equitable relief against forfeiture of lease; injunction against suits at law.*—When a bill by a lessee to enjoin an action for rent due under a contract of lease and a suit in ejectment for the leased premises, founded upon an alleged forfeiture of the lease by the lessee, alleges facts showing that there has been a full compliance by complainant with the terms of the lease, and that if a forfeiture has occurred it has been waived by the lessor, and bill is without equity, and can not be maintained, because it shows that complainant has a full and adequate defense at law to both suits, and fails to show a necessity for equitable relief against the forfeiture.

2. *Multiplicity of suits.*—Such a bill cannot be maintained on the ground of avoiding a multiplicity of suits, because to the only two suits alleged to be pending clear and complete defenses at law are shown to exist, and the vague and indefinite statement in the bill that "other suits are threatened," does not relieve it of this objection, nor give force to the alleged ground of equity.

3. *Bill for accounting; necessary averments.*—A bill for an accounting, which·shows that the necessary *data*, sufficient to enable a jury to determine the amount due to the litigant parties respectively, are readily ascertainable, can not be maintained, because the bill fails to

[Attalla Mining & Manufacturing Co. v. Winchester et al.]

aver that there is such complexity or intricacy in the account as show a necessity for a resort to equity for a statement thereof.

APPEAL from the Chancery Court of Etowah.
Heard before the Hon. S. K. MCSPADDEN.

The bill in this case was filed in January, 1893, by the appellant against the appellees; and prayed an injunction restraining the maintenance of certain suits brought by the defendant, Winchester, against the complainant; and also for an accounting between the complainant and the defendants. The defendants demurred to the bill, and also moved to dismiss it, on the grounds that it contained no equity, and that the complainant had a full, complete and adequate remedy at law, and also moved to dissolve the injunction. The facts are sufficiently stated in the opinion.

On the submission of the cause on the demurrer and on the motions to dismiss the bill and dissolve the injunction, the chancellor sustained the demurrer, granted the motion to dismiss, and dissolved the injunction. The complainant appeals, and assigns the chancellor's decree in this behalf as error.

JAMES L. TANNER and CHARLES TURNER, for appellant, cited *Abrams v. Watson*, 59 Ala. 524; Pomeroy's Eq. Jur., § 453; Taylor's Land & Ten., §§ 495, 496, 497; *McClurg v. Price*, 59 Pa. St. 420; *Thropp v. Field*, 26 N. J. Eq. 82; *Sheets v. Selden*, 7 Wall. 416; *Garnhart v. Finney*, 93 Amer. Dec. 303.

DORTCH & MARTIN, *contra*.—Complainant does not show any ground for equitable relief against the forfeiturely enjoining the two suits. The facts averred in the bill show that it has a full, complete and adequate defense against both of the suits at law.

There is no complication of accounts, such as calls for the exercise of chancery jurisdiction.—*Dickinson v. Lewis*, 34 Ala. 643; *The State v. Bradshaw*, 60 Ala. 242.

STONE, C. J.—The appeal in this case is from the decree of the chancery court sustaining demurrers to the bill of complaint and dissolving the injunction.

The case made by the bill is, in substance, as follows:
In 1886, S. M. Winchester conveyed to Obal Christopher

and Samuel Stewart the right to mine the soft ore in and upon certain iron ore land in Etowah county for a term of ten years. By the terms of the lease the lessees were bound to mine not less than 20,000 tons of soft ore *per annum*, except that, in case of strikes or blow-outs at furnaces with which the lessees might have contracts, due allowance was to be made for the period covered by such strikes and blow-outs. The shipments of ore were to be at least 1,500 tons each and every month during the continuance of the lease, on which a royalty of thirty cents per ton of 2,268 pounds was to be paid to the lessor ; but the mining and shipment of ore were required to reach 20,000 tons each year. And if the shipment of ore should fall below 1,500 tons in any months, the lessees were authorized to make it up in the other months of the year. In case of failure to mine and ship 20,000 tons of ore in any year, the lessees were to pay royalty as if the entire annual quantity had been mined and shipped. The royalty was made payable between the 15th and 25th of each month in cash, except where the lessees found it necessary to take time paper from the purchaser of ore (which time should not exceed four months), then, and in that event, the purchaser was to make separate paper to the lessor for the royalty, and if by the taking of time paper the price of ore should be increased above the cash price, the lessor was to have the benefit of a proportionate increase on his royalty. No sales of ore on time were to be made by the lessees without notice to the lessor, and if made against his objection, the lessees were bound to make the royalty good on all ore so sold. The lessees were allowed to use all timber necessary for mining purposes, and for building houses for miners, and all laps and wood left over from timber so used. The lessees were also to have the use of all houses then on the premises and of all cars, railroad tracks and every thing then on the property belonging to the lessor, which was used for mining purposes ; but all such property, together with all improvements that might be placed upon the property by the lessees, except machinery operated by steam, was to belong to the lessor at the termination of the lease. Failure to pay the royalty on ore actually mined and shipped for 60 days after it became due, according to the terms of the lease, was to operate a forfeiture of the lease, entitling the lessor to re-enter and

take possession of the property. Failure to mine and ship 20,000 tons of ore in any year, and failure for ninety days to pay royalty on that quantity of ore for such year was to work a like forfeiture. The lease was also to be forfeited, if there should be an abandonment of mining operations for six months. The lease was to remain in force for ten years, as aforesaid, if the soft ore should last that long, and the lessees were to mine and ship as much more than 20,000 tons of ore as might be practicable and as could be sold. The lessees were to have possession of the leased property by December 1, 1886, and were to commence shipping ore by the first day of January, 1887. The books of the lessees, relating to the business and the mines themselves, were to be subject to the lessor's inspection. The lease contains other provisions not material to the questions raised by the appeal.

On the 30th day of October, 1888, Winchester granted to Obal Christopher the right to mine the hard ore on the same lands, by lease containing substantially the same stipulations embraced in the lease above described; except as to the price of the ore and the quantity to be mined and shipped per month and *per annum*. The price of the hard ore being fixed at $12\frac{1}{2}$ cents per ton, and minimum quantity to be shipped monthly and annually being, respectively, 2,000 and 24,000 tons.

Both leases, the bill avers, were duly transferred and assigned to the Attalla Mining and Manufacturing Company, the appellant, with the consent or acquiescence of the lessor, who has since accepted and received payments of royalty under the terms of said leases. The bill further shows that notwithstanding the stipulation in the leases that possession should be given of all said property at the time mentioned in the leases, that neither appellant nor any of its predecessors under said lease had ever been able to obtain possession of that part of the leased property designated in the leases as the Rhea lands, but possession thereof had been forcibly withheld (but by whom is not stated) from the original lessees, and the successive assignees of said leases (including appellant), by which the right to mine both soft and hard ore on that portion of the property had been lost to appellant. That frequent demand had been made upon the lessor by appellant and its predecessors under said

leases to be put in possession of said Rhea lands, but said lessor made no effort in that behalf. That said Rhea lands contain large quantities of both hard and soft ore, and constitute a material and valuable portion of the leased property. That Winchester has a good title to the iron ore in said Rhea lands, and the right to immediate possession thereof for his lessees, and that his failure to place appellant in possession is due to Winchester's neglect and disregard of appellant's rights, or his purpose to defeat appellant's rights under the lease. It is further averred that during the year 1891 several strikes of the employés occurred, greatly delaying appellant's mining operations on that portion of the property, of which it was placed in possession, and that several furnaces with which it had contracts for ore went out of blast, in consequence of which appellant was not able to mine the full quantity of ore required by said leases for the year 1891, and in consequence of which appellant was relieved, by the terms of the leases, from its failure to mine the stipulated minimum quantity of ore and from paying royalty for said year. The bill further shows that a portion of the railroad track that was on the premises at the time the leases were executed, and which were embraced by the terms of the lease, was wrongfully removed from the lands by the railroad company, whereby appellant was greatly hindered and inconvenienced in its mining operations, and the covenants of the leases violated, &c. It is further averred that appellant has expended about $15,-000, or more, in improvements necessary for developing the mines, and that, notwithstanding the hindrances complained of, it has (due allowance being made for strikes and blow-outs) mined the full quantity of ore and paid all the royalty prescribed by the leases. But that, notwithstanding this, Winchester, the lessor, combining and conspiring with others, unknown to appellant, has endeavored to coerce it into a modification of said leases, by which it would be deprived of many of the favorable terms of said leases; and that failing in this, said Winchester has declared said leases forfeited, has brought suit to recover the sum of $5,000, claimed to be due for royalties, and has also brought suit in ejectment to recover possession of the leased property, which suits were so brought with the fraudulent purpose of compelling appellant to agree to a modification of said leases as above

stated. The bill also avers full compliance on appellant's part with the stipulations of the leases, after making due allowance for blow-outs and strikes, and that it has frequently demanded an accounting of Winchester, which has been refused by him, That nothing is due by way of royalty, or, if any thing, it is a small amount, which appellant has always been willing to pay, and offers to pay. That said amount could not be settled in the action brought to recover the property, but the account being complicated can only be settled in a court of equity. That if the ejectment suit proceeds appellant will lose the benefit of the remainder of its term and its improvements, however small may be the amount it may owe for royalties, and notwithstanding its willingness to pay the same. That other suits are threatened, and the state of the account can only be determined in equity. It is further shown that Winchester has assigned to the First National Bank of Chattanooga all the royalties, accruing under the leases, as collateral security; and that payments of royalty have been made to said bank, some of which were so made with Winchester's knowledge, and acquiesence, after he had declared the leases forfeited; whereby he had waived such forfeiture, if any such right existed.

The bank is made a party defendant with Winchester; and the prayer of the bill is for an injunction against the further maintenance of said suits, and for an accounting pursuant to the terms of the leases. The case was submitted on demurrer to the bill and on motion to dissolve the injunction. The chancery court sustained the demurrers and dissolved the injunction.

The frame of the bill indicates that its equity is based upon the undoubted jurisdiction of courts of equity to grant relief against forfeitures incurred under agreements for the payment of money, in cases where the damages accruing from a breach of the agreement may be compensated by the payment of the amount actually due, with interest; the general rule being that where the agreement is simply one for the payment of money, a forfeiture incurred by its non-performance will be set aside at the instance of the defaulting party, or relieved against in any other manner made necessary by the circumstances of the case, on payment of the debt, interest and costs, if any have accrued, unless by his inequitable

conduct he has debarred himself from the remedial right, or unless the remedy is prohibited under the special circumstances of the case, by some other controlling doctrine of equity.

As applicable to cases involving leases, the rule has been stated to be, that when a lease contains a condition that the lessor may re-enter, and put an end to the lessee's estate, or even that the lease shall be void, upon the lessee's failure to pay the rent at the time specified, a court of equity will relieve the lessee, and set aside a forfeiture incurred by his breach of the condition, whether the lessor has or has not entered and dispossessed the tenant. The reason and philosophy of the rule, in such cases, are that such condition and forfeiture are intended merely as security for the payment of money.—1 Pom. Eq. Jur., §§ 450, 453.

In *Root v. Johnson,* 99 Ala. 90, we said: "Forfeitures are not favorites in equity, and, unless the penalty is fairly proportionate to the damage suffered by the breach, relief will be granted when the court can give by way of compensation all that could be reasonably expected." While the doctrine of equitable relief in cases of forfeiture is clearly settled, as we have shown, it is by no means clear, that the bill of complaint in this cause makes out a case within that ground of equity jurisdiction. Indeed, construing the allegations of the bill most strongly against the pleader, as we must on demurrer, we are constrained to hold that it not only fails to show a forfeiture incurred, against which relief is necessary in equity, but, on the contrary, that there has been a full compliance by appellant with the terms of the lease, and consequently that no forfeiture has accrued, and furthermore, that if a forfeiture has occurred, it has been waived by the lessor.

While the bill shows that Winchester, the lessor, claims a forfeiture of the leases, because of appellant's alleged failure to mine and pay royalty on the minimum quantity of ore required by the terms of the leases, it further shows that this failure is protected by the express stipulations of the leases which provides against such failure when caused by strikes and blow-outs. We quote briefly from the 8th paragraph of the bill as follows: "But the amount of ore actually mined by your orator, with the credits and reduction to which your

orator is, by the terms of said lease, entitled on account
of said strikes and blow-outs, greatly exceeds the min-
imum fixed and required to be mined." And again,
from the amendment of April 4, 1893: "Your orator
alleges and insists that it has not failed to substantially
comply with the terms and stipulations of said leases,
according to the terms and legal effect thereof, and that,
due allowance being made for the contingencies provided
for therein, your orator has mined the full amount of
ore required by the terms thereof, and has paid the roy-
alties due on all the ore mined." From these state-
ments of the bill it is very clear, that appellant has a
full and adequate defense at law both to the action of
ejectment and to the suit for rent. In the former action
the introduction in evidence of the written leases from
the plaintiff in ejectment, and proof of their transfer to ap-
pellant, would, of course, defeat a recovery, unless the
plaintiff should be able to show a breach of the condi-
tions of the leases operating a forfeiture of appellant's es-
tate, but which, taking the allegations of the bill to be
true, the plaintiff would be unable to show. So, also,
in regard to the suit for rent. Proof of the full pay-
ment of royalty, as alleged in the bill, would defeat any
recovery by the plaintiff.

We also quote further from the statements of the
amendment to the bill of February 27, 1893, as follows:
"That complainant has paid rents and royalties to the
said assignee's agent and representative of said defen-
dant, Winchester, since the assertion of said alleged for-
feiture, and since the institution of said ejectment suit,
and such payments have been applied to and for the
benefit of said defendant, Winchester, and so received
and accepted by him." The language employed in the
bill to show such waiver would be wholly insufficient for
that purpose had it been set up in answer to a bill to en-
force the forfeiture.—*Brooks v. Rogers*, 99 Ala. 433.
But, as employed in the bill before us, and on
demurrer, we must construe it most strongly
against the pleader, and, therefore, hold that it implies
the rent so received by Winchester accrued after the
alleged breach of condition, and was so received under
the lease with knowledge of all the circumstances. So
construing it, the bill shows a full and complete defense
to Winchester's action of ejectment on two grounds,

viz., First, that no forfeiture of the leases has ever occurred; Second, if a forfeiture ever occurred, it was waived by Winchester.

From what we have said, it is clear the bill can not be maintained, for the reason that it fails to show a necessity for equitable relief against the forfeiture, or that pecuniary compensation can not be made for the breach. It is, however, urged, that other grounds of equitable interposition are shown, and that if any one ground is established, the court should not only assume jurisdiction, but go on and determine all the questions in controversy, although it might involve the adjudication of matters of purely legal cognizance. The principle contended for is undoubtedly correct. We have frequently recognized it in our decisions.—*Va. & Ala. Min. & Manfg. Co. v. Hale*, 93 Ala. 542. But we are unable to perceive that the bill contains any ground upon which equitable jurisdiction attaches.

It can not be maintained upon the ground of avoiding a multiplicity of suits, because but two suits are shown to be pending, as to both of which clear and unembarrassed defenses at law are shown to exist, and the bare allusions in the 13th paragraph of the bill to threatened suits is too vague and indefinite to add any thing to this alleged ground of equity.

Nor does the bill show mutual or complicated accounts, which a jury could not examine, and state with requisite accuracy. The bill shows that the necessary *data* are readily ascertainable sufficient to enable a jury to determine what deductions, according to the terms of the lease, should be allowed on account of strikes and blowouts, from the required out-put of ore, and from the royalty agreed to be paid. There is no such complexity or intricacy in the accounts, appearing from the averments of fact in the bill (outside of the mere statement of the pleader's conclusions), as show a necessity for a resort to equity for a statement thereof. The jurisdiction of equity on this ground was denied by us in a case showing much greater difficulties in the statement of the account than is here shown.—*Va. & Ala. Min. & Manfg. Co. v. Hale, supra.*

We will not discuss the other alleged grounds of equity jurisdiction urged in support of the bill. We simply cite the authorities which show conclusively that neither

[McCarthy & Baldwin v. Louisville & Nashville Railroad Company.]

the alleged failure of appellant to obtain possession of the Rhea lands embraced in the lease, nor the removal by the railway company of its track from part of the leased premises, the alleged conspiracy of Winchester with others to compel a forfeiture of the lease, singly or together, warrant a resort to a court of equity.—*Abrams v. Watkins*, 59 Ala. 534; *Wingo v. Hardy*, 94 Ala. 184.

The chancery court did not err in sustaining the demurrer to the original and amended bills, and in dissolving the injunction.

Its decree is affirmed.